Schnader | The Higher Calling of the Law
ATTORNEYS AT LAW

140 Broadway Suite 3100
New York, NY 10005-1101
212.973.8000 Fax 212.972.8798 schnader.com

January 19, 2023

Cynthia A. Murray
Direct Dial 212-973-8077
Direct Fax 212-972-8798
E-Mail: cmurray@schnader.com

**<u>Via ECF</u>**

The Honorable Victor Marrero
United States District Judge
United States District Court
for the Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Courtroom 15B
New York, New York 10007

RE: *Empery Tax Efficient, LP v. MusclePharm Corp. et al.*, 1:23-cv-00074-VM

Dear Judge Marrero:

Defendants White Winston Select Asset Funds, LLC and White Winston Select Asset Fund Series Fund MP-18, LLC (together, "White Winston") oppose Empery's request to remand this action to the New York state court. The Court should refuse Empery's request because Empery's newly amended claims "arise in" a bankruptcy case and a remand would be inequitable. If the Court is not inclined to deny Empery's request for a remand outright, then the Court should require a fuller factual and legal record before deciding the issue.

## I. Empery's New Claims Are In the Core of Federal Bankruptcy Jurisdiction

To begin with, the removal of this action to this Court by defendant Ryan Drexler was entirely proper. The sole claim Empery asserted against Mr. Drexler and White Winston at the time of removal was brought under New York's Uniform Voidable Transactions Act ("UVTA"). Such claims "arise under" the Bankruptcy Code, *see, e.g., Burns v. Grupo Mexico S.A. de C.V.*, 2007 WL 4046762, *5 (S.D.N.Y. Nov. 16, 2007), so Mr. Drexler had a clear right to remove the action under 28 U.S.C. § 1452(a) and § 1334(b). Tellingly, Empery chose to drastically amend its pleading to jettison its UVTA claim and replace it with tenuous and deficient "tortious interference" claims to try to get the action back into state court. That Empery went to such lengths to try to obtain a remand demonstrates that the action was properly removed.

Now Empery asserts claims of tortious interference that are expressly predicated on allegations that White Winston and Mr. Drexler "caused MusclePharm to file a petition for Chapter 11 bankruptcy" and then "t[ook] actions *in the bankruptcy* to thwart Empery's ability to

be repaid." ECF No. 18 (Am. Compl.) ¶¶ 7, 59 (emphasis added). These "actions" consist simply of White Winston's submission of *proposals* to provide MusclePharm with debtor-in-possession ("DIP") financing during its bankruptcy, Am. Compl. ¶¶ 59-61, financing that Empery itself wants to provide and so wants White Winston eliminated as a competing lender. Empery's allegations "would have no practical existence," indeed, would not exist at all, "but for [MusclePharm's] bankruptcy." *In re Ames Dep't Stores, Inc.*, 317 B.R. 260, 269 (Bankr. S.D.N.Y. 2004). Empery's new claims based on these allegations thus "aris[e] in" a "case under title 11" for purposes of 28 U.S.C. § 1334(b). *Id.*

Further, the selection of a DIP lender, and on what terms, is a central part of the bankruptcy court's administration of the bankruptcy estate and, in consequence, a "core" matter. *See* 28 U.S.C. § 157(b)(2) ("matters concerning the administration of the estate" are "[c]ore proceedings"); *cf. In re U.S. Flow Corp.*, 332 B.R. 792, 792-93 (Bankr. W.D. Mich. 2005) (concluding that a dispute was a core proceeding because it "ar[ose] out of this court's previous DIP financing order and affect[ed] the administration of this bankruptcy estate"); *In re Gremillion*, 2016 WL 890038, *3 (E.D. La. Mar. 8, 2016) ("disputes between non-debtors" are "core matters" when they turn on issues "essential to the administration of the bankruptcy estate" (citing *In re Best Prods. Co.*, 68 F.3d 26, 31 (2d Cir. 1995))). It is the prerogative of the bankruptcy court, not a state court, to approve or reject a particular DIP-financing proposal or DIP lender. To expose a willing DIP lender to state tort liability in state court on the mere submission of a DIP-financing proposal in a bankruptcy case would chill beneficial competition to provide such financing and interfere with the bankruptcy court's orderly selection of a DIP lender. Indeed, chilling such competition is exactly Empery's objective.

This case therefore squarely belongs in federal court.

## II. Equity Does Not Support a Remand

While this Court could remand the action if there were an "equitable ground" to do so, 28 U.S.C. § 1452(b), no such ground exists. To the contrary, Empery filed its contempt motion to try to eliminate White Winston as a competing DIP lender. A remand would further this inequitable objective. And while Empery says that "the jurist who issued the TRO" is "best positioned to adjudicate whether defendants violated her order," ECF No. 23 (Letter) at 3, Empery's entire contempt motion is based, as already explained, on defendants' supposed inducement of MusclePharm's bankruptcy case and White Winston's submission of DIP-financing proposals in that case. Even assuming the state court's TRO purported to prohibit such actions — which, on its face, it did not — a federal court, not a state court, should decide whether such actions could give rise to contempt liability.

Contrary to Empery's arguments, this case is nothing like *Sutton 58 Associates LLC v. Pilevsky*, 36 N.Y.3d 297 (2020). The court in *Pilevsky* emphasized that the plaintiff there did "*not* allege that defendants induced the borrower's bankruptcy petition," *id.* at 312 (emphasis

added), which is precisely what Empery alleges here. The plaintiff's claim was thus not "premised upon a bankruptcy filing, itself, *or other alleged wrongful conduct within a bankruptcy*," and did not raise any question "as to *the propriety of the bankruptcy proceedings*." *Id.* at 309-10 (emphasis added). Here, of course, Empery *does* attempt to question "the propriety of the bankruptcy proceedings," contending wrongly that its filing was "ultra vires," Am. Compl. ¶ 38, an assertion that is impossible to reconcile with Empery's own quest to become MusclePharm's DIP lender in the bankruptcy. Further, in contrast to *Pilevsky*, Empery's claim is expressly based on "alleged wrongful conduct within [MusclePharm's] bankruptcy." 36 N.Y.3d at 309; *see* Am. Compl. ¶ 59 ("White Winston and Drexler have consistently taken actions *in the bankruptcy* to thwart Empery's ability to be repaid[.]" (emphasis added)).

In fact, this action is very like *Astor Holdings, Inc. v. Roski*, 325 F. Supp. 2d 251 (S.D.N.Y. 2003), distinguished in *Pilevsky*, which Empery fails to mention. In *Pilevsky*, the plaintiff sought to hold a non-debtor liable for "inducing" a debtor to file for bankruptcy. The court there rejected the attempt, explaining in no uncertain terms that "*no liability* can attach to [the debtor's] filing for bankruptcy because the Bankruptcy Code preempts any state-law remedy for improper bankruptcy filings." *Id.* at 263 (emphasis added).

Remanding this action would facilitate Empery's improper attempt to gain an advantage in MusclePharm's bankruptcy case and hinder MusclePharm's efforts to obtain DIP financing on terms that will aid rather than undermine its orderly reorganization. A remand would be a deeply inequitable outcome.

## III. A Remand Should Not Be Granted Without a Fuller Record

Lastly, Empery's remand request is based on fanciful and false assertions that White Winston "took control" of MusclePharm and caused it to file a supposedly unauthorized bankruptcy petition. Empery's letter brief is bereft of record support for these assertions. Moreover, Empery fails to cite *any* legal authority that such allegations are outside this Court's "arising in" jurisdiction under 28 U.S.C. § 1334(b). Empery's letter therefore fails to provide a remotely sufficient factual and legal basis to decide the remand issue. If the Court is not inclined to deny Empery's request for a remand outright, it should require formal motion practice and full briefing before doing so.

Respectfully,

*/s/ Cynthia A. Murray*

Cynthia A. Murray
For SCHNADER HARRISON SEGAL & LEWIS LLP

cc: All Counsel (via ECF)