UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _3/21/2023_

---

EMPERY TAX EFFICIENT, LP,

                              Plaintiff,

         - against -

MUSCLEPHARM CORPORATION, WHITE WINSTON
SELECT ASSET FUNDS, LLC, WHITE WINSTON
SELECT ASSET FUND SERIES MP-18, LLC,
and RYAN DREXLER,

                              Defendants.

---

**23 Civ. 74 (VM)**

<u>**DECISION AND ORDER**</u>

**VICTOR MARRERO, United States District Judge.**

        Plaintiff Empery Tax Efficient, LP ("Empery" or "Plaintiff") brought this action against defendants MusclePharm Corporation ("MusclePharm" or the "Company"), White Winston Select Asset Funds, LLC, White Winston Select Asset Fund Series MP-18, LLC (with White Winston Select Asset Funds, LLC, the "White Winston Defendants"), and Ryan Drexler ("Drexler" and collectively, with MusclePharm and the White Winston Defendants, the "Original Defendants") before Justice Andrea Masley in New York State Supreme Court, New York County ("State Court"). The original complaint alleged four counts of breach of contract against MusclePharm and a violation of Sections 273 and 274 of the New York Uniform Voidable Transactions Act (the "UVTA"), N.Y. Debt. & Cred. Law §§ 273, 274, against the Original Defendants and sought indemnification. (See "Original Complaint," Dkt. No. 1-1.)

Drexler timely removed the case from State Court to this Court, under 28 U.S.C. Section 1452(a), on the ground that the Court has "related to" jurisdiction over this action under 28 U.S.C. Section 1334 ("Section 1334"). (See "Notice of Removal," Dkt. No. 1 ¶¶ 7-9.) Drexler additionally notified the Court that he would move to transfer venue to the United States District Court for the District of Nevada for referral to the United States Bankruptcy Court for the District of Nevada on account of MusclePharm having filed for bankruptcy there. (Id. ¶ 15.)

At the time of removal on January 5, 2023, a temporary restraining order ("TRO") entered in State Court against the Original Defendants had been in effect since December 15, 2022. (See "TRO," Dkt. No. 1-2.) Empery had moved to hold the Original Defendants in contempt of court for violating the TRO. (See Dkt. No. 5-20.) Hearings on the TRO and the contempt motion had been scheduled in State Court before Justice Masley. (See TRO; Dkt. No. 5-38.)

After the case was removed to this Court, the parties filed their remaining submissions on Empery's contempt motion. Empery subsequently dismissed MusclePharm as a defendant and filed an amended complaint against the White Winston Defendants and Drexler (together, "Defendants"). (See

"Amended Complaint," Dkt. No. 18.)[1] The Amended Complaint alleged (1) tortious interference with a contractual relationship and (2) tortious interference with prospective business advantage. The TRO was allowed to expire on January 26, 2023, while the contempt motion for the alleged violation of the TRO remains pending.

On January 16, 2023, Empery notified this Court that it planned to file a motion to remand this case to State Court and proposed a briefing schedule. The Court granted the briefing schedule on the remand motion (see Dkt. No. 24) and informed the parties that the contempt motion would be held in abeyance pending adjudication of the remand motion (see Dkt. No. 36).

Now before the Court is Empery's letter motion to remand the case to State Court. (See "Motion," Dkt. No. 23.)[2] Empery seeks to remand the case on the ground that MusclePharm, the only defendant with a connection to a bankruptcy proceeding, had been dismissed. Empery also requested that if remand is denied, the Court should grant Empery limited expedited discovery on its contempt motion. (See id. at 3.) The White

---

[1] The Amended Complaint was initially filed on January 11, 2023. (See Dkt. No. 17.) However, due to a filing error, it was re-filed on January 12, 2023. (See Dkt. No. 18.)

[2] Empery's motion to remand was initially filed on January 16, 2023. (See Dkt. No. 21.) However, due to a filing error, it was re-filed on January 17, 2023. (See Dkt. No. 23.)

Winston Defendants and Drexler each filed an opposition to Empery's motion (see "White Winston Opp.," Dkt. No. 27; "Drexler Opp.," Dkt. No. 28), and Empery filed a reply (see "Reply," Dkt. No. 30). Upon consideration of the parties' submissions and arguments, the Court hereby grants Empery's motion to remand this action to State Court.

### I.   BACKGROUND

A.   FACTUAL BACKGROUND[3]

Empery is a noteholder and collateral agent to certain secured noteholders (collectively, the "Secured Noteholders") of original issue discount senior secured notes (the "Notes") issued by MusclePharm. At the time that the Original Complaint was filed, MusclePharm was insolvent. On October 13, 2021 and June 3, 2022, Empery and the Secured Noteholders[4] provided funding to MusclePharm through a Securities Purchase Agreement (the "SPA") and then an Amended and Restated SPA (the "Amended SPA") to help finance the Company in its

---

[3] The factual background, except as otherwise noted, is derived from the Original Complaint, Amended Complaint, and the documents attached thereto. The Court accepts as true the facts alleged in the Original Complaint and Amended Complaint. "On a motion for remand, we 'must construe all disputed questions of fact and controlling substantive law in favor of the plaintiff . . . .'" Allstate Ins. Co. v. Credit Suisse Sec. (USA) LLC, No. 11 Civ. 2232, 2011 WL 4965150, at *2 (S.D.N.Y. 2011) (citing In re NASDAQ Mkt. Makers Antitrust Litig., 929 F. Supp. 174, 178 (S.D.N.Y. 1996)). Except where specifically referenced, no further citation to these documents will be made.

[4] The Secured Noteholders are comprised of the initial purchasers who purchased notes on October 13, 2021 and the subsequent purchasers who purchased notes on June 3, 2022.

purported rollout of an energy performance drink. The maturity date for all of the Notes, after extension, was December 10, 2022.

Pursuant to both the SPA and the Amended SPA, Empery was appointed the "Collateral Agent" for the Secured Noteholders and retained the power and authority to enforce the Secured Noteholders' rights under the Notes. The Notes included specific terms and conditions,[5] which if breached, would constitute an "Event of Default" that would entitle the Secured Noteholders to immediate repayment of "the outstanding principal amount of [the] Note plus accrued but unpaid interest." (Original Complaint ¶ 26.) Empery was authorized under Section 9 of the Pledge and Security Agreement (the "PSA") "to bring legal action on behalf of the Secured Noteholders . . . ." (Id. ¶ 28.)

---

[5] For example, Section 3(a) of the Notes prohibited MusclePharm, subject to limited exceptions, from incurring any indebtedness "consisting primarily of Indebtedness in existence at the time the Notes were issued, and limited the amounts of ordinary course Indebtedness and Indebtedness that is subordinated to the Notes . . . ." (Original Complaint ¶ 21.) Section 3(b) prohibited MusclePharm, subject to limited exceptions, from incurring any liens "consisting primarily of Liens securing Indebtedness permitted under the Notes, tax Liens and ordinary course Liens." (Id. ¶ 22.) Section 3(e) prohibited repayment of any indebtedness except for certain repayments that are expressly permitted under the Notes. Section 3(h) prohibited MusclePharm from "'consummat[ing] any agreement with respect to' the negative covenants in the Notes," which includes both taking actions described in the Section 3 provisions above as well as agreeing to take such actions in the future. (Id. ¶ 24.) The Notes also protected the Secured Noteholders from a "Change of Control Transaction" involving "acquisition . . . by an individual or legal entity . . . of effective control . . . in excess of 33% of the voting securities" of MusclePharm. (Id. ¶ 25.)

MusclePharm ultimately failed to repay the Notes by the December 10, 2022 maturity date and breached other covenants under the Notes' terms. In the period leading up to the final maturity date, MusclePharm's financial situation created cause for concern among Empery and the Secured Noteholders. In an attempt to recoup the costs incurred by the Secured Noteholders, Empery notified MusclePharm of its breaches, which included sending an Event of Default Redemption notice, and recommended to the MusclePharm Board that the Company reorganize under Chapter 11 of the Bankruptcy Code, which then-CEO Drexler rejected. Accordingly, on November 30, 2022, Empery issued notice of a U.C.C. Article 9 foreclosure sale ("Article 9 Sale") set for December 15, 2022 to auction off MusclePharm's remaining assets in order to repay the Secured Noteholders.

On December 5, 2022, shortly after Empery's notice of the Article 9 Sale, MusclePharm and Drexler entered into a settlement agreement (the "Settlement Agreement") with the White Winston Defendants. The White Winston Defendants are unsecured equity holders in MusclePharm and their interests in the Company are subordinate to those of the Secured

Noteholders.[6] The Settlement Agreement would give Defendants control of the MusclePharm Board and subvert the Secured Noteholders' rights in favor of the White Winston Defendants.[7] Drexler and the White Winston Defendants were allegedly aware of the Notes, the contract between MusclePharm and the Secured Noteholders, and the Article 9 Sale at the time they entered into the Settlement Agreement.

After the Settlement Agreement was executed, the White Winston Defendants contacted Empery requesting a 30-day postponement of the Article 9 Sale, which Empery refused.[8] To enjoin the consummation of the Settlement Agreement, Empery brought this action and sought a TRO in State Court on December 14, 2022, one day before the Article 9 Sale was to take place. That day, MusclePharm also filed a separate action to enjoin the foreclosure sale. Hours before the Article 9

---

[6] Prior to entering into the Settlement Agreement, the White Winston Defendants had commenced multiple lawsuits against MusclePharm and its directors for breach of their fiduciary duties.

[7] The Settlement Agreement specifically provided that: the White Winston Defendants would drop their legal claims against MusclePharm; MusclePharm would pay the White Winston Defendants a total of $4,000,000 and issue a convertible bond to the White Winston Defendants, secured by junior liens on MusclePharm's assets and those of its subsidiaries without the Secured Noteholders' consent; Drexler would resign as CEO; Drexler and the White Winston Defendants would expand and reconstitute the MusclePharm Board with their own delegates; and Drexler would grant the White Winston Defendants a proxy of effective control in excess of 33 percent of the voting securities of MusclePharm (constituting a "Change of Control Transaction" under the terms of the Notes).

[8] Unless otherwise indicated, the facts from this point until the end of the section (i.e., Section I.A.) are alleged only in the Amended Complaint or the Notice of Removal.

Sale was to take place, on December 15, 2022, Justice Masley heard argument on both motions and granted Empery's TRO while denying MusclePharm's request to enjoin the Article 9 Sale.

Immediately thereafter, on December 15, 2022, Drexler and the White Winston Defendants caused MusclePharm to file a Chapter 11 bankruptcy petition, which halted the Article 9 Sale three minutes after it began. The bankruptcy filing occurred without the requisite steps taken by the MusclePharm Board pursuant to its Articles of Incorporation, which includes providing notice, convening a special meeting, or executing a written consent in lieu of a meeting in advance of the bankruptcy filing. Empery contends that by causing the bankruptcy petition to be filed unauthorized, Defendants effectively "consummated the Settlement Agreement because they effectuated the change of control provisions therein."[9] (Amended Complaint ¶ 7.) The purported consummation of the Settlement Agreement was prohibited by the TRO, and Empery consequently filed a contempt motion in State Court for alleged violation of the TRO.

Since filing the bankruptcy petition, Defendants proposed a debtor-in-possession ("DIP") financing agreement

_____

[9] The Court notes that Drexler rejects the characterization of the bankruptcy filing as "the consummation of an eleven-page, fifteen-paragraph settlement agreement" in his opposition letter brief. (Drexler Opp. at 3.)

between the White Winston Defendants and MusclePharm that would convey MusclePharm's property to the White Winston Defendants, grant them a security interest in the assets that make up the Secured Noteholders' collateral, and pay the White Winston Defendants' attorneys' fees.

Finally, Drexler removed this action from State Court to federal court on the ground that it is "related to" a bankruptcy proceeding as a result of MusclePharm filing a bankruptcy petition. (Notice of Removal ¶ 9.) After removal, Empery dismissed MusclePharm as a defendant in this case and filed an Amended Complaint against Defendants in which Empery alleges two state law tortious interference causes of action.

B.   THE PARTIES' ARGUMENTS

Empery argues that remand to State Court is warranted because Drexler's sole ground for removing the case was that it was "related to" a bankruptcy proceeding pursuant to 28 U.S.C. Section 1334(b), but Empery has since dismissed MusclePharm, the only party with a pending bankruptcy case, to eliminate the Court's jurisdiction to hear the case. Empery further argues that even if this proceeding is "related to" the bankruptcy case, mandatory abstention under 28 U.S.C. Section 1334(c)(2) applies. Empery argues that in the alternative, remand is appropriate under permissive abstention, pursuant to 28 U.S.C. Section 1334(c)(1), and

equitable remand grounds, pursuant to 28 U.S.C. Section 1452(b).

The White Winston Defendants oppose remand on the grounds that at the time of removal, Empery's sole cause of action asserted against Defendants was brought under New York's UVTA, which they argue "arises under" the Bankruptcy Code, rendering removal proper. They further argue that the state law tortious interference claims as alleged in the Amended Complaint and which replaced the UVTA claim "arise in" bankruptcy, rendering this matter a "core proceeding." The White Winston Defendants also argue that equity does not support remand on the ground that Empery filed its contempt motion in order to eliminate the White Winston Defendants as a competing DIP lender, and "[a] remand would further this inequitable objective." (White Winston Opp. at 2.)

Similarly, Drexler argues that remand is not proper because "arising in" and "related to" bankruptcy jurisdiction existed at the time of removal, which is the point at which the Court should consider whether removal jurisdiction existed, and that Empery's subsequent attempt to plead away federal jurisdiction by filing the Amended Complaint does not divest the Court of jurisdiction. Drexler further contends that even if the Court limits its consideration of jurisdiction to the Amended Complaint, the new causes of

action also "arise in" and "relate to" the bankruptcy
proceeding, rendering mandatory abstention inapplicable and
remand improper. Drexler also argues that the Court should
not permissively abstain or equitably remand the proceeding.

## II.   LEGAL STANDARD

A.   REMOVAL JURISDICTION

Under Section 1452(a) of Title 28, "[a] party may remove
any claim or cause of action in a civil action . . . to the
district court for the district where such civil action is
pending, if such district court has jurisdiction of such claim
or cause of action under section 1334 of this title." 28
U.S.C. § 1452(a). "When challenged, the party seeking removal
bears the burden of establishing that the federal district
court has jurisdiction." Allstate Ins. Co. v. Citimortgage,
Inc., No. 11 Civ. 1927, 2012 WL 967582, at *2 (S.D.N.Y. Mar.
13, 2012). As a general matter, removal jurisdiction must be
"strictly construed," Syngenta Crop Prot., Inc. v. Henson,
537 U.S. 28, 32 (2002), and "out of respect for the limited
jurisdiction of the federal courts and the rights of states,
[courts] must resolve any doubts against removability." In re
Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig., 488
F.3d 112, 124 (2d Cir. 2007) (citation omitted).

B.   JURISDICTION UNDER 28 U.S.C. § 1334(b)

"The propriety of removal under § 1452(a) is predicated on the scope of federal jurisdiction under 28 U.S.C. § 1334 . . . ." In re Refco, Inc. Sec. Litig., 628 F. Supp. 2d 432, 437 (S.D.N.Y. 2008). Section 1334(b) of Title 28 governs federal court jurisdiction in bankruptcy-related matters, granting district courts jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11" of the Bankruptcy Code. 28 U.S.C. § 1334(b). "As a result, the three types of jurisdiction that district (and hence bankruptcy) courts may exercise under § 1334 are colloquially referred to as 'arising under,' 'arising in,' and 'related to' jurisdiction." In re Ames Dep't. Stores, Inc., 317 B.R. 260, 269 (Bankr. S.D.N.Y. 2004).

"Arising under" proceedings consist of causes of action created by Title 11 of the Bankruptcy Code, meaning "'any matter under which a claim is made under a provision of [T]itle 11.'" In re Salander-O'Reilly Galleries, LLC, 475 B.R. 9, 27 (S.D.N.Y. 2012) (citing Binder & Binder, P.C. v. Finnie, No. 05 Civ. 3652, 2007 WL 1574294, at *10 (Bankr. S.D.N.Y. May 29, 2007)). A claim "arises in" bankruptcy when, although not based on any right expressly created by Title 11, it "'would have no practical existence but for the bankruptcy.'" In re Casual Male Corp., 317 B.R. 472, 476 (Bankr. S.D.N.Y.

2004) (citing <u>Bergstrom v. Dalkon Shield Claimants Trust</u>, 86 F.3d 364, 372 (4th Cir. 1996)). Common-law claims closely connected with the administration of the bankruptcy can qualify as "arising in" a bankruptcy even though they may, in a literal sense, be brought outside a bankruptcy action. <u>See Winstar Holdings, LLC v. Blackstone Grp. L.P.</u>, No. 07 Civ. 4634, 2007 WL 4323003, at *3 (S.D.N.Y. Dec. 10, 2007) (noting that "arising in" jurisdiction is "less clearly defined" than "arising under" jurisdiction). However, not all "garden-variety common-law claims" qualify. <u>Id.</u> at *4.

"Arising under" and "arising in" claims are both considered "core" bankruptcy proceedings, while "related to" claims are "non-core" proceedings. <u>Shiboleth v. Yerushalmi</u>, 412 B.R. 113, 116 (S.D.N.Y. 2009). "Related to" jurisdiction is established where the outcome of the proceeding "might have any 'conceivable effect' . . . or any 'significant connection' with the bankrupt estate." <u>In re Cuyahoga Equip. Corp.</u>, 980 F.2d 110, 114 (2d Cir. 1992) (citing <u>In re Turner</u>, 724 F.2d 338, 340-41 (2d Cir. 1983)).

C.   <u>ABSTENTION</u>

Where a federal district court has only "related to" jurisdiction, i.e., a non-core proceeding, the court must determine whether mandatory abstention applies. <u>See</u> 28 U.S.C. § 1334(c)(2) (providing that for "related to" cases under

title 11, "the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction"); KeyBank Nat'l Ass'n v. Franklin Advisers, Inc., 600 B.R. 214, 225 (S.D.N.Y. 2019). A court must abstain from hearing the matter if the following six criteria are met:

> (1) the motion to abstain was timely; (2) the action is based on a state law claim; (3) the action is "related to" but not "arising in" a bankruptcy case or "arising under" the Bankruptcy Code; (4) Section 1334 provides the sole basis for federal jurisdiction; (5) an action is commenced in state court; (6) that action can be "timely adjudicated" in state court.

In re WorldCom, Inc. Sec. Litig., 293 B.R. 308, 331 (S.D.N.Y. 2003) (citations omitted). "A party is not entitled to mandatory abstention if it fails to prove any *one* of the statutory requirements." Id. (emphasis in original).

If the matter is a core proceeding, that is, it has either "arising under" or "arising in" jurisdiction, then a court may permissively abstain under 28 U.S.C. Section 1334(c)(1) or choose to remand a case on equitable grounds under 28 U.S.C. Section 1452(b). See KeyBank Nat'l Ass'n, 600 B.R. at 225. Section 1334(c)(1) provides that "nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or

14

related to a case under title 11." 28 U.S.C. § 1334(c)(1).

Moreover, courts "have a 'virtually unflagging obligation . . .

to exercise the jurisdiction given them,' and may abstain

only for a few 'extraordinary and narrow exception[s].'" In

re WorldCom, Inc. Sec. Litig., 293 B.R. at 332 (citing

Colorado River Water Conserv. Dist. v. United States, 424 U.S.

800, 813, 817 (1976)).

    When deciding whether permissive abstention under

Section 1334(c)(1) is warranted, courts generally consider

one or more of the following factors:

> (1) the effect or lack thereof on the efficient
> administration of the estate if a [c]ourt recommends
> abstention, (2) the extent to which state law issues
> predominate over bankruptcy issues, (3) the difficulty
> or unsettled nature of the applicable state law, (4) the
> presence of a related proceeding commenced in state
> court or other non-bankruptcy court, (5) the
> jurisdictional basis, if any, other than 28 U.S.C. §
> 1334, (6) the degree of relatedness or remoteness of the
> proceeding to the main bankruptcy case, (7) the
> substance rather than form of an asserted "core"
> proceeding, (8) the feasibility of severing state law
> claims from core bankruptcy matters to allow judgments
> to be entered in state court with enforcement left to
> the bankruptcy court, (9) the burden on the court's
> docket, (10) the likelihood that the commencement of the
> proceeding in a bankruptcy court involves forum shopping
> by one of the parties, (11) the existence of a right to
> a jury trial, and (12) the presence in the proceeding of
> nondebtor parties.

Lothian Cassidy, LLC v. Lothian Expl. & Dev. II, L.P., 487

B.R. 158, 165 (S.D.N.Y. 2013) (citing Allstate Ins. Co., 2012

WL 967582, at *6) (internal quotation marks omitted).

A court may also remand a case on equitable grounds under Section 1452(b). "[A]n 'equitable ground' [is] one that is fair and reasonable." <u>In re Cathedral of the Incarnation in the Diocese of Long Island</u>, 99 F.3d 66, 69 (2d Cir. 1996). To determine whether remand is warranted on equitable grounds, courts consider the following factors:

> (1) whether issues of state law predominate; (2) whether judicial economy would be served by equitable remand; (3) whether § 1334(b) is the sole basis for exercising federal jurisdiction; (4) whether the proceeding involves non-debtors; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; and (6) the likelihood that the proceeding was commenced in a particular forum because of forum shopping on the part of one of the parties.

<u>Shiboleth</u>, 412 B.R. at 117 (citing <u>Rahl v. Bande</u>, 316 B.R. 127, 135 (S.D.N.Y. 2004)). Given that the equitable remand inquiry is "essentially the same" as the permissive abstention inquiry, courts "often analyze[ them] together." <u>Worldview Ent. Holdings, Inc. v. Woodrow</u>, 611 B.R. 10, 20 (S.D.N.Y. 2019) (citing <u>Little Rest Twelve, Inc. v. Visan</u>, 458 B.R. 44, 60 (S.D.N.Y. 2011)).

### III. <u>DISCUSSION</u>

A.    <u>MOTION TO REMAND</u>

1. <u>Jurisdiction Under 28 U.S.C. § 1334(b)</u>

As an initial matter, to determine whether removal was proper in this case, the Court must establish which, if any, type of federal jurisdiction exists under Section 1334(b).

16

The Court recognizes that federal jurisdiction pursuant to Section 1334(b) "is determined, like federal jurisdiction generally, on the basis [of] the facts at the time of removal." In re WorldCom, Inc. Sec. Litig., 294 B.R. 553, 556 (S.D.N.Y. 2003) (citing In re Bissonnet Invs. LLC, 320 F.3d 520, 525 (5th Cir. 2003); In re Celotex Corp., 124 F.3d 619, 626 (4th Cir. 1997); In re Toledo, 170 F.3d 1340, 1346 n. 8 (11th Cir. 1999)).

Here, shortly after this case was removed from State Court, Empery dismissed MusclePharm, the only bankruptcy party, as a defendant, leaving the White Winston Defendants and Drexler, both of whom are non-debtors, as the remaining defendants. Almost contemporaneously, Empery filed the Amended Complaint and requested to file a motion to remand the case back to State Court. The Original Complaint contained four breach of contract causes of action against MusclePharm, a cause of action against MusclePharm and Defendants under the New York UVTA, and a cause of action for indemnification. The Amended Complaint abandoned all of the claims in the Original Complaint and asserted two state law tortious interference claims against Defendants. Though the Amended Complaint was likely filed to divest this Court of jurisdiction, the Court will consider the Original Complaint as the operative complaint for the purpose of this initial

17

inquiry on Empery's motion to remand. <u>See</u> <u>McCulloch</u> <u>Orthopedic Surgical Servs., PLLC v. United Healthcare Ins.</u> <u>Co. of New York</u>, No. 14 Civ. 6989, 2015 WL 3604249, at *3 (S.D.N.Y. June 8, 2015) (noting that a motion to remand is typically "evaluated on the basis of the allegations as pleaded at the time of removal") (citing <u>Vera v. Saks & Co.</u>, 335 F.3d 109, 116 n.2 (2d Cir. 2003) (per curiam)).

In their respective opposition letters, Drexler and the White Winston Defendants argue that removal was proper at the time of removal because the Original Complaint included a cause of action against Defendants brought under the UVTA, which they contend "arises under" the Bankruptcy Code. (<u>See</u> Drexler Opp. at 1; White Winston Opp. at 1.) To support a cause of action under the UVTA, the Original Complaint alleges that the Original Defendants, including an insolvent MusclePharm, entered into the Settlement Agreement that included various provisions that violate the Amended SPA and the Notes, and that these acts were conducted "with the actual intent to hinder, delay and defraud the Secured Noteholders." (Original Complaint ¶ 82.) Through this cause of action, Empery sought to void a fraudulent transfer of MusclePharm's property to Defendants made prior to the filing of the bankruptcy petition.

The New York UVTA, which replaced the Uniform Fraudulent Conveyance Act, became effective on April 4, 2020 and more closely reflects the federal Bankruptcy Code.[10] Under 28 U.S.C. Section 157(b), "proceedings to determine, avoid, or recover fraudulent conveyances" are considered "core proceedings," indicating that they arise under or in title 11. 28 U.S.C. § 157(b)(2)(H). In arguing that this cause of action "arises under" the Bankruptcy Code, the White Winston Defendants rely on Rahl v. Bande, decided by a court in this district, for the proposition that fraudulent conveyances under New York law constitute "core proceedings." See 316 B.R. 127 (S.D.N.Y. 2004). In Rahl, the court noted that the plaintiff specifically invoked 11 U.S.C. Section 544(b)(1), which contemplates that the plaintiff's trustee would be authorized to utilize New York's version of the Uniform Fraudulent Conveyance Act to prove that certain transactions are constructively fraudulent. Id. at 132. Without this provision, a trustee would lack standing to bring such a claim, which would render that claim as one that "arises under" title 11. Id.

Drexler cites Burns v. Grupo Mexico S.A. De. C.V., No. 07 Civ. 3496, 2007 WL 4046762, at *3 (S.D.N.Y. Nov. 16, 2007)

---

[10] Thomas R. Slome, Michelle McMahon & Sophia Hepheastou, Uniform Voidable Transactions Act Signed Into Law, N.Y.L.J. (Dec. 9, 2019).

in support of his contention that fraudulent conveyance claims "arise under" title 11. In Burns, the action originated in state court and was initiated by unsecured creditors seeking to recover property that was fraudulently transferred by the bankruptcy debtor, a non-party, prior to its filing for bankruptcy. See id. at *1. After the non-party had filed for bankruptcy, the case was eventually removed to federal court and the bankruptcy non-party substituted themselves as plaintiffs in the action. See id. at *1-2. The district court established that the trustees of the bankrupt estate had the "exclusive authority" to maintain the removed claims pursuant to the authority of 11 U.S.C. Section 544(b). Id. at *3. And in determining whether jurisdiction was proper, the court found that the fraudulent conveyance claim constituted a core proceeding "arising under" title 11. See id. at *5 (citing Mt. McKinley Ins. Co. v. Corning Inc., 399 F.3d 436, 447-48 (2d Cir. 2005)).

Here, the Court is not persuaded that the New York UVTA claim against the Original Defendants is a core proceeding "arising under" bankruptcy as Defendants contend. While "fraudulent conveyance" claims constitute "core proceedings" under 28 U.S.C. Section 157(b)(2), the Court does not construe that term to mean that all fraudulent conveyances categorically arise under the Bankruptcy Code. Instead, this

determination requires a more fact-intensive inquiry. In finding "arising under" jurisdiction, the cases cited by Defendants both specifically invoke title 11 of the Bankruptcy Code and the authority of bankruptcy trustees to pursue fraudulent conveyance claims, particulars that are absent in the instant case.

The Court is also not persuaded that "arising in" jurisdiction exists based on the UVTA claim. The UVTA claim is not one that "would have no practical existence but for the bankruptcy" as it was in fact brought outside of the bankruptcy proceeding before the petition was even filed. In re Casual Male Corp., 317 B.R. at 476. Neither is the claim one that "by [its] nature, not [its] particular factual circumstance, could only arise in the context of a bankruptcy case." In re Seven Fields Dev. Corp., 505 F.3d 237, 260 (3d Cir. 2007) (citation omitted).

Courts in other jurisdictions have found that depending on the facts, fraudulent conveyance claims may confer only "related to" jurisdiction rather than "arising under" or "arising in" jurisdiction. See, e.g., In re The Heritage Org., LLC, 454 B.R. 353, 360 (Bankr. N.D. Tex. 2011) ("The claim under Texas's Uniform Fraudulent Transfer Act . . . does not invoke a right created by title 11, and clearly exists outside of bankruptcy. Therefore, at most, it is a 'related to' claim

21

under section 1334(b)."); Whitney Nat'l Bank v. Lakewood Invs., No. 11 Civ. 179, 2011 WL 3267160, at *5 (S.D. Ala. July 28, 2011) (rejecting argument that fraudulent transfer claim was a core proceeding because there was no indication that cause of action or substantive right was created by a specific section of the Bankruptcy Code but claim could be considered a core proceeding if it was brought by a bankruptcy trustee); see also In re Bliss Techs., Inc., 307 B.R. 598, 605 (Bankr. E.D. Mich. 2004) ("The trustee's ability to pursue a fraudulent transfer 'arises under' 11 U.S.C. § 544(b)(1) because such a cause of action is 'only available after a bankruptcy case has been filed and after a trustee has been appointed or the debtor-in-possession has been created.'") (citing In re EWI, Inc., Nos. 96 Civ. 61065, 96 Civ 6119, 1997 WL 811693, at *3 (Bankr. N.D. Ohio Dec. 5, 1997)); In re Manton, 585 B.R. 630, 635 (Bankr. N.D. Ga. 2018) (finding fraudulent conveyance claim was a core proceeding even though it was based on state law, initiated prior to debtor's bankruptcy, and not initiated by a trustee in part because trustee filed motion to intervene showing an intent to pursue claim).

Likewise, here, the fraudulent conveyance claim was brought by Empery, not by a trustee of the bankruptcy estate, prior to the initiation of MusclePharm's bankruptcy

proceeding, and at the time of removal, there was no trustee seeking to intervene in this action. Further, the fraudulent conveyance was brought under state law, the New York UVTA. While this consideration is not dispositive in finding that a proceeding does not constitute a core proceeding, Empery did not invoke any substantive right created by the Bankruptcy Code for asserting a fraudulent conveyance claim and, again, Empery's claim was not invoked under the authority of a trustee of the bankruptcy estate. See 28 U.S.C. § 157(b)(3) ("A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law."); but see In re Mankin, 823 F.2d 1296, 1300-01 (9th Cir. 1987) ), overruled on other grounds by In re Bellingham Ins. Agency, Inc., 702 F.3d 553 (9th Cir. 2012) (noting that trustee bringing fraudulent conveyance action under state law could constitute a core proceeding).

The Court, therefore, finds that Empery's UVTA claim neither arises under title 11 nor arises in bankruptcy. The Court recognizes, however, that the UVTA claim could conceivably have an effect on MusclePharm, which was in bankruptcy proceedings at the time of removal, as a fraudulent conveyance action is one in which creditors seek to recover a transfer made by a debtor. See Burns, 2007 WL 4046762, at *4. Pursuing the UVTA claim to judgment could conceivably

"alter the debtor's rights, liabilities, options, or freedom of action," In re Tower Automotive, Inc., 356 B.R. 598, 600 (Bankr. S.D.N.Y. 2006) (citing Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984)), or impact the "handling and administration of the bankrupt estate," In re Cavalry Const., Inc., 496 B.R. 106, 111-12 (S.D.N.Y. 2013) (internal quotation marks and citation omitted).

Drexler also raises the argument that Empery's contempt motion is "a collateral attack on MusclePharm's bankruptcy petition and financing proposals therein," conferring "arising in" jurisdiction "[b]ecause such motion would not exist but for the bankruptcy filing." (Drexler Opp. at 1.) The Court is not persuaded that the contempt motion confers "arising in" jurisdiction on the entire action. The contempt motion for violating Justice Masley's TRO is not by its nature a claim that can be brought only in bankruptcy proceedings, and indeed such claims are routinely brought in state court. Further, the claim is not so connected to the bankruptcy estate's administration or process such that it could be said to be arising in bankruptcy.

In light of the potential effect of this action on the MusclePharm bankruptcy proceeding, the Court finds that it possesses "related to" jurisdiction over the claims Empery

24

asserted in the Original Complaint.[11] Based on the facts existing at the time of removal of the action to this Court, this case was properly removed from State Court to federal district court under Section 1334(b).

> 2. <u>Abstention</u>

> a. <u>Mandatory Abstention</u>

Because only "related to" jurisdiction exists here, the instant action constitutes a "non-core" proceeding, and the Court now turns to whether it must abstain from hearing the case under the mandatory abstention doctrine. The Court finds that all six factors[12] are satisfied in this case, mandating abstention.

---

[11] The Court notes that even if it considered the Amended Complaint as the operative complaint, only "related to" jurisdiction exists, rendering the proceeding "non-core" and likewise subject to a mandatory abstention analysis. The Court disagrees with Defendants' argument that the claims in the Amended Complaint "arise in" bankruptcy. The Amended Complaint alleges tortious interference with a contractual relationship and tortious interference with a prospective business advantage under state law. It is true that the causes of action hinge on the fact that Defendants allegedly caused MusclePharm to file for bankruptcy, the effect of which resulted in the consummation of the Settlement Agreement, thereby causing MusclePharm to breach its contracts with the Secured Noteholders. However, these claims are purely state law claims that are routinely brought and adjudicated in state court, and are not of a nature that "could only arise in the context of a bankruptcy." <u>In re Seven Fields Dev. Corp.</u>, 505 F.3d 237, 260 (3d Cir. 2007) (citation omitted); <u>see also</u> <u>In re Extended Stay, Inc.</u>, 418 B.R. 49, 52, 58 (Bankr. S.D.N.Y. 2009), <u>aff'd</u> <u>in</u> <u>part</u>, 435 B.R. 139 (S.D.N.Y. 2010) (determining that tortious interference claims against non-debtors for improperly inducing debtor to file for bankruptcy did not "arise in" bankruptcy or "arise under" the Bankruptcy Code). Still, because the outcome of the claims could have an effect on the administration of the bankrupt MusclePharm estate, the Court finds that "related to" jurisdiction would exist.

[12] Given the extended discussion on the second factor, the Court will address it last.

Regarding the first factor, the motion to abstain was timely. Drexler removed this action from State Court on January 5, 2023, and Empery filed its motion requesting the Court to abstain as part of its motion to remand on January 16, 2023, less than two weeks after the Notice of Removal was filed. Thus, the first factor is satisfied.

As this Court established above, based on the Original Complaint, upon which the Court relies in considering this remand motion, the action is "related to" but not "arising in" or "arising under" a bankruptcy case, satisfying the third factor.

As to the fourth factor, Section 1334 provides the sole basis for federal jurisdiction. Drexler argues that this Court has diversity jurisdiction to hear the case, contending that the parties are citizens of different states. However, the Court is not persuaded that based on the facts alleged in the Original Complaint, the Amended Complaint, and the submissions by the parties, that diversity jurisdiction has been properly established. Diversity jurisdiction must exist at the time of removal and when the action is commenced in State Court. See CBS Inc. v. Snyder, 762 F. Supp. 71, 73 (S.D.N.Y. 1991). In addition to the amount in controversy exceeding $75,000, the parties must be completely diverse; that is, no plaintiff and no defendant may be citizens of the

same state. <u>See</u> <u>Handelsman v. Bedford Vill. Assocs. Ltd.
P'ship</u>, 213 F.3d 48, 51 (2d Cir. 2000).

The burden of establishing diversity jurisdiction lies
with the party seeking to exercise jurisdiction in federal
court. <u>See</u> <u>Mehlenbacher v. Akzo Nobel Salt, Inc.</u>, 216 F.3d
291, 296 (2d Cir. 2000) (citing <u>McNutt v. General Motors
Acceptance Corp.</u>, 298 U.S. 178, 189 (1936)). The Court is not
persuaded that Drexler, the party advancing this argument,
has established that diversity jurisdiction exists. Empery is
a limited partnership, and, at the time of removal, the
Original Defendants comprised one corporation, two limited
liability corporations, and an individual. The citizenship of
a limited partnership is not determined by the principal place
of business but by the citizenship of each of its members.
<u>See</u> <u>Astra Oil Trading v. PRSI Trading Co. LP</u>, 794 F. Supp. 2d
462, 469 (S.D.N.Y. 2011). The same holds true for limited
liability corporations. <u>Bayerische Landesbank, New York
Branch v. Aladdin Cap. Mgmt. LLC</u>, 692 F.3d 42, 49 (2d Cir.
2012). The Original Complaint and Amended Complaint provide
the principal place of business and state of incorporation or
formation for the business entities, but offer no facts about
the citizenship of their respective members for diversity
jurisdiction purposes. Without additional facts about the
citizenship of the members of the limited partnership and

limited liability corporations, Drexler has not established that diversity jurisdiction exists, and the Court therefore rejects Drexler's argument. Accordingly, Section 1334(b) remains the sole basis for exercising federal jurisdiction, meeting the fourth mandatory abstention factor.

Concerning the fifth factor, the action was commenced in state court. Notably, some courts have held that a lawsuit is no longer "commenced" in state court once it is removed. See, e.g., Arstk, Inc. v. Audre Recognition Sys., Inc., No. 95 Civ. 10519, 1996 WL 229883, at *4 (S.D.N.Y. May 7, 1996); In re Lazar, 237 F.3d 967, 981–82 (9th Cir. 2001). However, the Second Circuit has determined that this factor is satisfied in removed cases because "mandatory abstention does not require a pending state law suit" and that if remanded, "the proceeding will be reinstated and a speedy adjudication can be had . . . ." Mt. McKinley Ins. Co., 399 F.3d at 446–47. Here, the Court finds that the action was commenced in State Court prior to removal, thereby satisfying this factor.

On the sixth factor, the action can likely be "timely adjudicated" in State Court. By the end of 2022, in the Southern District of New York, the court system had 13,113 case filings (roughly 11,368 of which were civil), with 14,652

terminations, thus disposing of more cases than were filed.[13] United States District Courts, Nat'l Judicial Caseload Profile, at 11 (Dec. 31, 2022), https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2022.pdf. In the New York State Supreme Court, the statewide docket in 2022 had 152,484 new civil cases filed with 152,762 matters reaching disposition. New York State Unified Court System, 2022 Annual Report, at 62 (Feb. 28, 2023), https://www.nycourts.gov/legacyPDFS/22_UCS-Annual_Report.pdf. The State Supreme Court encompassing New York City had 74,030 new civil cases and 66,955 total dispositions, resulting in a roughly 90.4 percent disposition rate. Id. Though the volume of the State Supreme Court docket exceeds the federal docket, the Court finds that the disposition rates are comparable. Further, roughly 17 percent of all State Supreme Court civil filings in 2022 were classified as motor vehicle matters while 19 percent were uncontested matrimonials. Id. That these cases comprised roughly 36 percent of the entire civil docket in 2022 is significant because they are likely "simpler and more quickly dealt with than the types of civil cases usually

---

[13] The National Judicial Caseload Profile (the "NJC Profile") does not disaggregate how many cases among the 13,113 total cases are civil. However, the NJC Profile provides the number of civil filings (406) per judge (28) in 2022, which suggests that there were roughly 11,368 civil filings that year. Additionally, the NJC Profile does not indicate how many of the 14,652 terminated cases were civil cases, but the Court finds it reasonable that most of the terminated cases are civil cases.

filed in the New York Federal Court." In re AOG Ent., Inc., 569 B.R. 563, 581-82 (Bankr. S.D.N.Y. 2017). Additionally, the Court finds that the issues raised in the Amended Complaint -- tortious interference -- are straightforward state law issues that are not uniquely complex and over which the State Court would have expertise. Judicial economy would also be served if this action were remanded to State Court, as Justice Masley is already well-acquainted with the matter at hand given that she previously heard arguments on the TRO, entered the TRO, and scheduled a contempt motion hearing to consider the alleged violation of the TRO she entered. Finally, "there is nothing in the record to indicate that [the action] cannot be timely adjudicated." In re Extended Stay Inc., 435 B.R. at 152. For these reasons, the Court finds that the sixth factor is met.

The second factor -- that the action is based on state law -- deserves a more extended discussion. The Court finds that both the Original Complaint and the Amended Complaint comprise only state law claims. As discussed above, the Original Complaint consists of four contract claims, one claim under the New York UVTA, and one indemnification claim.

These claims are all state law claims, which the parties do not dispute.[14]

The Amended Complaint, which will, absent further amendments, likely be the operative complaint for the actual adjudication of the matter on the merits, asserts two state law tortious interference causes of action against Defendants. Empery argues that state law issues predominate on the basis of the tortious interference claims, while Defendants counter that the state law claims are in substance bankruptcy-related claims that belong in federal court. The Court finds that the tortious interference causes of action in the Amended Complaint are also state law claims, satisfying the second factor.

In pleading tortious interference, the Amended Complaint alleges that Defendants "fraudulently, illegally and purposefully assumed control over MusclePharm and caused it to seek bankruptcy protection to stop the Article 9 Sale, convey Company assets to White Winston, and frustrate the Secured Noteholders' lien on the collateral." (Amended Complaint ¶ 75.) Empery alleges that as a result of these actions, Defendants gained effective control of MusclePharm,

---

[14] Though Defendants contend that the UVTA claim in the Original Complaint arises under title 11 of the Bankruptcy Code, the Court has rejected that argument in the previous section.

and consummated the Settlement Agreement which sought to convey assets to Defendants and frustrate the Secured Noteholders' liens on the collateral, thereby tortiously interfering with and inducing breaches by MusclePharm of the Amended SPA, the Notes, and the PSA.

In arguing whether the tortious interference causes of action constitute state law claims, the parties rely on two cases that, in essence, raise the question of whether federal bankruptcy preemption changes the nature of a state law claim. Empery cites Sutton 58 Associates, LLC v. Pilevsky, 36 N.Y.3d 297, 303 (2020), to argue that the tortious interference claim can properly be heard in State Court. Empery argues that in Pilevsky, the New York Court of Appeals held that a state court may adjudicate a claim in which a non-debtor defendant "interferes with a foreclosure sale and induces a bankruptcy when the bankruptcy 'resulted in a significant loss in value' of the collateral." (Motion at 3 (citing Pilevsky, 36 N.Y.3d at 303).) There, the plaintiff, Sutton 58 Associates, issued a loan to a mezzanine borrower and a real estate borrower, both non-parties to the action, to finance a real estate development project in Manhattan. See Pilevsky, 36 N.Y.3d at 301. Upon maturity of the loan, the non-party debtors defaulted and filed for Chapter 11 bankruptcy in federal court. See id. at 302. Prior to filing for bankruptcy, the defendants

-- persons and entities affiliated with the non-party borrowers -- allegedly obtained an ownership interest in the development project, in violation of the loan agreements between the plaintiff and the non-party debtors, which included covenants "prohibiting the borrowers from incurring non-permitted indebtedness, owning other assets, and transferring any interest in the borrowers . . . ." Id. at 303. The plaintiff brought suit against the non-debtor defendants, alleging tortious interference based on their actions to aid or induce the debtors to breach the contractual loan covenants. The defendants argued that the Bankruptcy Code preempted the underlying action, warranting dismissal.

The Pilevsky court determined that the alleged violation of the contractual terms occurred before, and separate from, the bankruptcy proceedings, and thus, the claims would "not require the adjudication of rights and duties of creditors and debtors under the Bankruptcy Code." Id. at 311. On those grounds, the court held that the plaintiff's action was not preempted by the Bankruptcy Code because the borrowers in the bankruptcy proceedings "are unaffected by whether plaintiff prevails on its tort claims against defendants, and the state action has no impact on the borrowers' ability to obtain a 'fresh start.'" Id. at 311 (citation omitted).

The White Winston Defendants distinguish Pilevsky on the ground that the Pilevsky court "emphasized that the plaintiff . . . did 'not allege that defendants induced the borrower's bankruptcy petition,'" which the White Winston Defendants assert Empery does in the instant case. (White Winston Opp. at 2-3 (citing Pilevsky, 36 N.Y.3d at 312).) Thus, the state court in Pilevsky would not be "asked to determine whether the borrowers' bankruptcy petitions were filed in bad faith or whether defendants engaged in some wrongful conduct during the bankruptcy proceedings themselves," issues that should be reserved for the bankruptcy court. Pilevsky, 36 N.Y.3d at 311-12.

Instead, the White Winston Defendants contend that this case is more like Astor Holdings, Inc. v. Roski, 325 F. Supp. 2d 251 (S.D.N.Y. 2003), a decision by a court in this district that similarly involved a plaintiff seeking to hold a non-debtor liable for inducing an improper bankruptcy filing. In Astor Holdings, the court held that the plaintiff could not litigate in state court the question of whether the non-debtor defendants induced the debtor to file for bankruptcy in bad faith "because the Bankruptcy Code preempts any state-law remedy for improper bankruptcy filings." Id. at 263. The plaintiff's complaint specifically included a cause of action for a breach of contract, in part, on the ground that the

non-debtor defendants induced the debtor business, Robot Wars, to file for bankruptcy in an effort to divest the plaintiff of its interest in the business. See id. at 260. The court determined that the claim was preempted under the Bankruptcy Code, which is broad in scope by Congress's design. See id. at 262.

The Astor Holdings court cited the Second Circuit's decision in Eastern Equip. & Services Corp. v. Factory Point Nat'l Bank, 236 F.3d 117 (2d Cir. 2001) to underscore "the broad scope of bankruptcy preemption." Astor Holdings, 325 F. Supp. 2d at 262-63. The court further cited the Ninth Circuit's decision in MSR Exploration, Ltd. v. Meridian Oil, Inc., 74 F.3d 910 (9th Cir. 1996) to emphasize that the "adjustment of rights and duties within the bankruptcy process itself is uniquely and exclusively federal" and that "[t]he highly complex laws needed to constitute the bankruptcy courts and regulate the rights of debtors and creditors also underscore the need to jealously guard the bankruptcy process from even slight incursions and disruptions brought about by state malicious prosecution actions." Astor Holdings, 325 F. Supp. 2d at 263 (citing MSR Exploration, 74 F.3d at 914). The Ninth Circuit in MSR Exploration further noted that federal bankruptcy law is "a field in which the federal interest is so dominant that the

35

federal system will be assumed to preclude enforcement of state laws on the same subject." 74 F.3d at 913 (citation omitted).

Additionally, in <u>In re Extended Stay</u>, a court in this district further relied on the Second Circuit's decision in <u>Sullivan v. American Airlines</u>, 424 F.3d 267 (2d Cir. 2005), to explain the "relationship between the preemptive effect of federal statutes and jurisdiction premised on such preemption." <u>In re Extended Stay Inc.</u>, 435 B.R. at 149. The court noted that ordinary preemption, which includes field preemption, "even when it eviscerates a state law claim, does not provide a basis for federal court jurisdiction of the state law claim." <u>Id.</u> On the other hand, complete preemption in which "the federal statutes at issue provide[] the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action," can "create[] federal subject matter jurisdiction over preempted state-law claims." <u>Id.</u> (citing <u>Sullivan</u>, 424 F.3d at 275) (internal quotation marks omitted).

Taking these cases together, the Court finds that federal bankruptcy preemption does not transform the character of the tortious interference claims from pure state law claims into federal law claims. The claims themselves, even though they allege that Defendants acted improperly by

causing MusclePharm to file for bankruptcy, thereby calling
into question the propriety of the bankruptcy petition,
remain state law claims that seek state law remedies. The
preemption issues raised in Pilevsky and Astor Holdings
constitute field preemption, which Defendants would be able
to raise as a defense to dismiss the action if it reaches the
merits. However, the Court's immediate task here is to
determine whether federal jurisdiction is proper, and
"preemption assertions are normally matters of defense and
will not suffice to establish federal jurisdiction." In re
Extended Stay Inc., 435 B.R. at 149 (citing MSR Exploration,
74 F.3d at 912). The Court is persuaded that tortious
interference claims are "routinely . . . asserted in state
court" and exist outside of bankruptcy. In re Extended Stay
Inc., 418 B.R. at 60. And the issue of preemption is not
properly before this Court. Accordingly, the action is based
on state law, and the second factor is satisfied.

Because all of the preceding factors requisite to
support mandatory abstention have been met in this case,
abstention is mandated, and the Court hereby grants Empery's
motion to remand.

b. Permissive Abstention and Equitable Remand

In the alternative, the Court finds that it would also
abstain from hearing this case on permissive abstention and

equitable remand grounds.[15] Pursuant to the twelve-factor balancing test underpinning claims of permissive abstention under 28 U.S.C. Section 1334(c)(1),[16] the Court finds that factors two (state law issues predominate), five (jurisdictional basis other than Section 1334), ten (forum shopping), and twelve (presence of non-debtor parties) weigh heavily in favor of the Court abstaining from hearing this case, warranting permissive abstention.

The Court has already established in the previous section that state law issues predominate and that the only jurisdictional basis for this case is 28 U.S.C. Section 1334. The Court further finds that the proceeding consists only of non-debtor parties. Because MusclePharm has been dismissed, the remaining defendants -- the White Winston Defendants and Drexler -- are non-bankruptcy parties, thus weighing in favor of abstention.

The parties also present arguments on the issue of forum shopping -- factor ten. Upon review of the arguments, the

---

[15] As equitable remand turns on largely the same factors as permissive abstention, the Court will consider them together and will not separately analyze the equitable remand factors.

[16] The Court notes that courts generally consider one or more of the factors when weighing whether to abstain. A court need not satisfy all twelve factors to find that abstention is warranted. In re Tronox, 603 B.R. 712, 726 (Bankr. S.D.N.Y. 2019), subsequently aff'd sub nom. In re Tronox Inc., No. 20 Civ. 3949, 2022 WL 16753119 (2d Cir. Nov. 8, 2022) ("However, '[i]n determining whether to exercise permissive abstention under § 1334(c) courts have considered one or more (not necessarily all) of twelve factors.'") (citation omitted).

Court is not persuaded that Empery's conduct in choosing a forum weighs against abstention. Drexler accuses Empery of forum-shopping because it filed an Amended Complaint in an attempt to eliminate federal jurisdiction. Empery counters that Drexler was, in fact, guilty of that act for causing MusclePharm's bankruptcy and subsequently removing the action to federal court in order to avoid the contempt motion hearing before Justice Masley in State Court, and that Empery's amending the Original Complaint occurred in response to Defendants' actions "that changed the landscape of the case." (Reply at 1.)

Courts in this district consider whether a "plaintiff has engaged in any manipulative tactics when it decides whether to remand a case." See, e.g., Payne v. Parkchester N. Condominiums, 134 F. Supp. 2d 582, 584 (S.D.N.Y. 2001). Courts may take such tactics into consideration when weighing the factors to decide whether to remand a case. See id.

The Court recognizes that Empery's actions in dismissing MusclePharm as a defendant, filing an amended complaint, and requesting leave to file a motion to remand all occurred in close temporal proximity, if not contemporaneously. Thus, a reasonable inference could be drawn that Empery sought to divest this Court of jurisdiction to hear the matter. See McGee v. State Farm Mut. Auto. Ins. Co., 684 F. Supp. 2d 258,

264-65 (E.D.N.Y. 2009) (finding that where amended complaint was filed contemporaneously with motion to remand, "[t]he inference is all but compelled that the complaint was amended with the deliberate purpose of divesting this Court of jurisdiction").

Upon review of the facts, the Court is not persuaded that forum-shopping concerns weigh against abstention. As other courts in this District have noted, because plaintiffs choose the forum in which to bring an action, if a plaintiff elects to press federal claims, that litigant should realize the risk that the case may be removed to federal court. See Payne, 134 F. Supp. 2d at 584-85. A plaintiff should make such an "assessment before the case is jockeyed from state court to federal court and back to state court." Id. (citation omitted). The Court does not find that this development represents what transpired here. There is no indication that Empery intended the Original Complaint to "be federal in character" nor did it "seek relief under a federal statute." Moscovitch v. Danbury Hosp., 25 F. Supp. 2d 74, 79 (D. Conn. 1998). Although Defendants argue that Empery's cause of action under the New York fraudulent conveyances statutes arises under Bankruptcy Code title 11, the Court rejected that argument above, finding that the claim is grounded on state law and neither arose under nor in bankruptcy. The only

other causes of action Empery asserted in the Original Complaint were breach of contract claims against MusclePharm and indemnification, all brought under state law.

Moreover, at the time that Empery initiated this case against the Original Defendants in State Court, MusclePharm had not yet filed for bankruptcy and Empery had reason to believe that MusclePharm would not do so given that MusclePharm had refused to file for bankruptcy upon Empery's suggestion in late 2022, which provided the impetus for Empery initiating the foreclosure sale of MusclePharm's assets. Although it is arguably foreseeable that the Original Defendants would attempt to halt the Article 9 Sale by causing MusclePharm to file a bankruptcy petition, Empery, in order to prevent any consummation of the Settlement Agreement, preemptively filed for and received the TRO, which it contends was violated, in part, by MusclePharm's filing a bankruptcy petition. This case was not removed to this Court until after MusclePharm filed for bankruptcy, which Empery alleges was induced by Defendants. Construing the facts alleged by Empery as true -- that Defendants consummated the Settlement Agreement by assuming control over MusclePharm, causing it to seek bankruptcy protection, and subverting the rights of the Secured Noteholders in favor of the White Winston Defendants -- it is more plausible for the Court to find that Defendants,

rather than Empery, were engaged in forum-shopping. Accordingly, the Court does not find that Empery's actions "smack of forum-shopping and bad-faith litigation tactics" as Drexler contends. (Drexler Opp. at 3.) This factor thus tips the scale in favor of abstention.

Upon considering the applicable factors, the Court concludes that it should permissively abstain or equitably remand the case to State Court.

B.   <u>LIMITED EXPEDITED DISCOVERY ON CONTEMPT MOTION</u>

As the Court has granted Empery's motion for remand, Empery's request for limited expedited discovery on its contempt motion for Defendants' alleged violation of the TRO becomes moot in this Court. Empery should pursue this request in State Court, and the Court hereby denies Empery's request as moot.

### IV.   <u>ORDER</u>

For the reasons stated above, it is hereby

**ORDERED** that the motion (Dkt. No. 23) filed by plaintiff Empery Tax Efficient, LP ("Empery") to remand this action to New York State Supreme Court, New York County is hereby **GRANTED**; and it is further

**ORDERED** that Empery's request (Dkt. No. 23) for limited expedited discovery on its contempt motion is hereby **DENIED** as moot.

The Clerk of Court is respectfully directed to terminate all pending motions, transmit a copy of this Order to New York State Supreme Court, New York County, and close this case.


**SO ORDERED.**

Dated:      21 March 2023
            New York, New York

                                    _____
                                         Victor Marrero
                                            U.S.D.J.

43